In re the MARRIAGE OF Connie J. RICHMOND, Appellant–Petitioner,

and

William E. Richmond, Appellee–Respondent.

No. 82A01–9206–CV–201.

Court of Appeals of Indiana, First District.

Dec. 29, 1992.

Edward W. Johnson, Johnson, Carroll and Griffith, Evansville, for appellant-petitioner.

Alan N. Shovers, Kahn, Dees, Donovan & Kahn, Evansville, for appellee-respondent.

1. "Agoraphobia" is an abnormal fear of being in open or public places. *Webster's Ninth New Collegiate Dictionary* (1988). At the dissolution

BAKER, Judge.

Petitioner-appellant Connie Richmond appeals the trial court's refusal to award her maintenance in the decree dissolving her marriage to respondent-appellee William Richmond. Connie raises one issue for our review, which we restate as: whether the trial court erred in denying Connie a maintenance award.

We affirm.

### Statement of Facts

William and Connie were married on August 12, 1984. At the time of their marriage, William was a 49–year old tenured professor at the University of Evansville. Connie, who received her bachelor of arts degree from the University of Evansville, was a 33–year old graduate student there.

Before marrying William, Connie supported herself and her son from a previous marriage by teaching art at the University, painting signs commissioned by the post office, and working as a waitress and dance-instructor. She supplemented her income by selling some of her paintings; in fact, Connie testified that her art show at the University sold more paintings and made more money than any other art show in the University's history.

When Connie married William in 1984, William earned $33,000.00 annually and had recently inherited over $630,000.00. Although Connie continued to work, paint, and attend school during the early part of their marriage, she eventually stopped all three activities. She testified that she did so after William orally promised her that she would never have to work because he would never divorce her.

At various times during their marriage, Connie went to see Dr. Holajter, a psychiatrist, to inquire about panic attacks she experienced. After several examinations, the doctor concluded Connie suffered from both a panic disorder and agoraphobia.[1] During the dissolution hearing, Dr. Ho-

hearing, Dr. Holajter defined it as "fear of marketplaces."

lajter testified that agoraphobia made it difficult for Connie to get out in public, to drive, or to work. When questioned about her inability to work, Dr. Holajter further stated that Connie was "very comfortable [at home] and does not want to change her situation." *Record* at 131.

The trial court entered a decree dissolving their marriage on November 25, 1991, and awarded Connie the family residence, subject to its mortgages, a joint bank account worth $30,000.00, and a car. In addition, the trial court ordered William to pay her attorney's fees and an additional $10,-000.00. At the dissolution hearing, Connie sought maintenance as a result of her disabilities, but the trial court denied her request. Connie appeals the denial.

### Discussion and Decision
#### I. Standard of Review

■ The decision to award maintenance is a matter wholly within the trial court's discretion. *Lulay v. Lulay* (1991), Ind.App., 583 N.E.2d 171, 173, *modified*, 591 N.E.2d 154. Our review is limited to the question of whether the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable deductions to be drawn therefrom. *In re Marriage of Dillman* (1985), Ind.App., 478 N.E.2d 86, 87. Even if a trial court finds that a spouse's incapacity materially affects her self-supportive ability, a maintenance award is not mandatory. *Id.*

#### II. Maintenance

Connie argues the trial court abused its discretion in failing to award her maintenance. She claims she is physically and mentally incapacitated as a result of both her panic disorder and agoraphobia, and bases her maintenance claim on IND. CODE 31–1–11.5–11(e)(1) which provides:

> If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support herself is materially

affected, the court may find that maintenance for that spouse is necessary during the period of incapacity, subject to further order of the court.

■ To award maintenance under this provision, the trial court must first make a threshold determination that (1) a spouse is physically or mentally incapacitated and (2) the incapacity materially affects the spouse's self-supportive ability. *Dillman, supra,* at 88. If the trial court finds that a spouse is incapacitated, it then has the discretion to award maintenance.

■ In this case, the trial court concluded that Connie is not incapacitated. Although Connie argues that she is physically and mentally unable to support herself, the record belies her claim. At the dissolution hearing, Connie acknowledged that medication sufficiently controls her panic attacks. Additionally, with respect to her agoraphobic condition, the record reveals Connie recently coordinated the remodeling of her home, a $40,000.00 project, which included the addition of an art studio.[2] To complete the remodeling, Connie frequently drove to numerous area stores and worked with several contractors and decorators. Although Dr. Holajter testified that an agoraphobiac has difficulty driving, being in public, and "entering the marketplace," Connie successfully performed all of these tasks during the remodeling project.

Similarly, the record also fails to support Dr. Holajter's testimony that Connie is physically and emotionally incapacitated. At the dissolution hearing, Dr. Holajter acknowledged that medication can control Connie's panic disorder. Concerning Connie's agoraphobia, Dr. Holajter admitted that he was not aware that she had recently coordinated the remodeling of her home. Dr. Holajter also admitted that he has never treated Connie's agoraphobia, that he could not predict how long her agoraphobia would continue, and that agoraphobia would not prevent Connie from working at

---

**2.** Connie claimed at the dissolution hearing that she could no longer earn money by selling her

paintings because she did not have studio space.

home.[3] Perhaps the most insightful description of Connie's situation was elicited by the trial court, which asked Dr. Holajter:

Q. You have indicated that she may never improve if her needs are taken care of *ad infinitum?*

A. ... I think that's true.

*Record* at 147.

The record reveals Connie is a talented artist, well-educated, competent, and able to manage her affairs effectively. Under these facts, it is plain Connie is not incapacitated to the extent that her ability to support herself has been materially affected. The trial court did not abuse its discretion when it denied her request for maintenance.

Affirmed.

SHARPNACK, C.J., and ROBERTSON, J., concur.

---

3. Connie testified that there is still a market for her artwork. She admitted, however, that she has made no efforts to sell her paintings or to seek other employment.