Daniel BIZIK, Appellant–Respondent,

v.

Brenda BIZIK, Appellee–Petitioner.

No. 64A03–0012–CV–451.

Court of Appeals of Indiana.

Aug. 17, 2001.

Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, Indianapolis, IN, Attorney for Appellant.

Karl L. Mulvaney, Nana Quay–Smith, Bingham Summers Welsh & Spilman LLP, Indianapolis, IN, Steven Langer, Valparaiso, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Daniel Bizik ("Dan"), challenges the trial court's divi-

sion of marital assets and award of spousal maintenance, upon the dissolution of his marriage to Appellee–Petitioner, Brenda Bizik ("Brenda").

We affirm in part, and reverse and remand in part.

### ISSUES

On appeal, Dan raises five issues for our review, which we restate as follows:

1. Despite finding that Dan's Executive Retirement Plan was not vested, whether the trial court erred by including Dan's Executive Supplemental Retirement Plan in the marital estate, and thereby awarding Brenda seventy percent (70 %) of the value of said plan.

2. Whether the trial court abused its discretion by ordering Dan to pay Brenda spousal maintenance in the amount of $400.00 per week, above and beyond her awarded share of the marital estate in the amount of $1,059,044.00.

3. Whether the trial court erred by finding that Dan's "unilateral decision to invade the martial estate and purportedly use certain monies for payment of the children's educational expenses was in violation of this Court's Agreed Provisional Order." (R. 110).

4. Whether the trial court erred by denying Dan's claim to set off the marital estate in the sum of $23,000.00, for monies he claims was received from his mother.

5. Whether the trial court abused its discretion by finding factors to support a deviation from the presumption of an equal marital property division, thereby awarding Brenda 70% of the marital estate.

### FACTS AND PROCEDURAL HISTORY

Dan and Brenda were married on June 1, 1968, and two children were born of the marriage, Blair and Blaine. Brenda filed a Petition for Separation on September 30, 1997.

On October 1, 1997, a joint preliminary injunction was issued, precluding both parties from incurring any debt or obligation that would create a debt or obligation for the other party. Moreover, the injunction precluded either party from disposing of joint property without the consent of the other party or by permission of the trial court.

On July 24, 1998, Brenda filed a Petition for Dissolution of Marriage and Provisional Order. Subsequently, a Joint Mutual Restraining Order was entered, restraining either party from transferring, encumbering, concealing, or otherwise disposing of joint property, except for the necessities of life, without the written consent of the other party, or without permission of the trial court. The parties thereafter entered into an agreed provisional order on January 16, 1999, which was filed with the trial court on March 3, 1999. On August 23, 1999, Dan filed a cross motion Petition for Dissolution of Marriage.

On December 14, 1999, the hearing commenced on the parties' petitions for dissolution of marriage. The hearing was reconvened on April 27, 2000, and concluded on May 3, 2000. On July 19, 2000, the trial court's Findings of Fact, Conclusions of Law and Dissolution Decree were entered.

Pursuant to the Dissolution Decree, the trial court ordered that Dan shall pay Brenda $400.00 per week as maintenance. Moreover, the trial court found that the total marital estate is valued at $1,512,920.00, to which Brenda is entitled to $1,059,044.00. The trial court further found that evidence supported a deviation from the statutory presumption of equal division of marital assets, and therefore, the trial court awarded Brenda 70% of the marital estate. Pursuant to the property distribution, Brenda received only

$945,337.52, and therefore, in order to effectuate a 70% division to Brenda, the trial court awarded Brenda a judgment in her favor and against Dan in the amount of $113,706.48. Dan now appeals.

## DISCUSSION AND DECISION
### Standard of Review

■ In this case, the trial court entered findings and conclusions pursuant to Ind.Trial Rule 52(A). On appeal, we will not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* Findings are clearly erroneous when the record contains no facts to support them either directly or by inference. *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996). The judgment is clearly erroneous if the findings do not support the conclusions of law or the conclusions of law do not support the judgment. *Id.*

■ The disposition of marital assets is within the sound discretion of the trial court. *Chase v. Chase,* 690 N.E.2d 753, 756 (Ind.Ct.App.1998). "When a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." *In re Marriage of Bartley,* 712 N.E.2d 537, 542 (Ind.Ct.App.1999). In reviewing a trial court's disposition of the marital assets, we focus on " 'what the court did, not what it could have done.' " *Chase,* 690 N.E.2d at 756 (quoting *Fiste v. Fiste,* 627 N.E.2d 1368, 1372 (Ind.Ct.App. 1994), *disapproved of on other grounds by Moyars v. Moyars,* 717 N.E.2d 976 (Ind. Ct.App.1999), *trans. denied* ).

■ Therefore, when we review a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion, considering only the evidence most favorable to the trial court's disposition of the property, without reweighing the evidence or assessing the credibility of witnesses. *Hodowal v. Hodowal,* 627 N.E.2d 869, 871 (Ind.Ct. App.1994), *trans. denied.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Myers v. Myers,* 560 N.E.2d 39, 42 (Ind.1990). An abuse of discretion also occurs when the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute. *Id.*

■ Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Bartley,* 712 N.E.2d at 542.

Ind.Code § 31–15–7–4(a) provides that in an action for dissolution of marriage, the trial court shall divide the property of the parties, regardless of whether it was:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

(A) after the marriage; and

(B) before final separation of the parties; or

(3) acquired by their joint efforts.

### I. Executive Supplemental Retirement Plan

The question in our case is whether Dan's Executive Supplemental Retirement Plan is marital property under the relevant statute, Ind.Code § 31–9–2–98(b), which provides:

"Property," for purposes of [marriage dissolution] means:

all the assets of either party or both parties, including:

(1) a present right to withdraw pension or retirement benefits;

(2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested (as defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage; and

(3) the right to receive disposable retired or retainer pay (as defined in 10 U.S.C. 1408(a)) acquired during the marriage that is or may be payable after the dissolution of marriage.

Therefore, because this section of our Dissolution of Marriage Act permits the inclusion of certain pension-type interests in the marital pot for division, we must determine whether Dan's Executive Supplemental Retirement Plan is "property" that falls within any of the categories of Ind.Code § 31–9–2–98.

Dan argues that the trial court erred by including his Executive Supplemental Retirement Plan in the marital pot for division. Specifically, Dan contends that the trial court improperly awarded Brenda an interest in his future income that he had no present right to withdraw and was not vested.

■ On the other hand, Brenda acknowledges that although all marital property goes into the marital pot for division, only property with a vested interest at the time of dissolution may be divided as a marital asset. *Dowden v. Allman,* 696 N.E.2d 456, 458 (Ind.Ct.App.1998). Nevertheless, Brenda claims that Dan failed to overcome his burden of proving that an asset is exempt from the marital pot. Specifically, Brenda argues that Dan failed to carry his burden of demonstrating that the Executive Supplemental Retirement Plan was not vested or that he had no present right to withdraw the benefits. However, this Court has continually held that absent any clear evidence that a pension was vested, a trial court should exclude the pension plan from the marital pot. *See Dowden,* 696 N.E.2d at 458 (holding that absent any clear evidence that the pension was vested, the trial court appropriately excluded it from the marital pot); *see also Grammer v. Grammer,* 566 N.E.2d 1080, 1083 (Ind. Ct.App.1991) (holding that the trial court erroneously included the husband's pension plan in the marital assets where the record was not clear that the pension has vested). Therefore, Brenda's argument that it was Dan's burden to demonstrate that his Executive Supplemental Retirement was not vested simply is not supported by the case law.

■ Moreover, in order to include pension benefits as marital property, the benefits must not be forfeited at the termination of employment or the benefits must be vested and payable either before or after the dissolution. *Hodowal,* 627 N.E.2d at 869. Nevertheless, the evidence does not support the trial court's determination to award Brenda 70% of Dan's Executive Supplemental Retirement Plan, when it specifically found that the Plan was not vested. Specifically, in his direct examination, Dan testified as follows:

Q [Dan's counsel] Okay. And then there was—there is some sort of executive plan as State Farm, is there not?

A [Dan] Yes.

Q You die today?

A Don't get it.

Q Okay. If you quit today?

A Don't get it.

Q Okay. You have to do what? Last until age 65?

A   Well, you have to retire at an acceptable age in that that [sic] job or a job level above to receive the executive supplemental.

Q   Is there—do you have any idea what that is? What that's worth?

A   No.

Q   They don't tell you that?

A   No.

Q   They just tell you it's out there?

A   Yes.

(R. 400–401).

However, on cross-examination, Brenda's counsel did not question Dan with respect to the non-vested status of his Executive Supplemental Plan, and she specifically delineated Dan's Executive Supplemental Plan as "Not vested" in her Proposed Findings of Fact and Conclusions of Law. (R. 75). Moreover, the trial court judge delineated Dan's Executive Supplemental Plan as "Not vested" in his Findings of Fact, Conclusions of Law and Dissolution Decree. (R. 108).

Therefore, the evidence reveals that Dan's Executive Supplemental Plan is not a pension or retirement plan that Dan has a present vested right from which to withdraw benefits. In fact, Dan testified that if he dies or retires before an acceptable retirement age, he is not entitled to the benefits from the Plan.

In sum, because Dan did not qualify for this benefit at any time during the marriage, and the Executive Supplemental Plan is an earning benefit contingent upon Dan's continuation of employment until retirement at an acceptable age, we conclude that Dan's Executive Supplemental Plan is not an asset as defined by Ind.Code § 31-9-2-98. We conclude that the trial court improperly included Dan's Executive Supplemental Plan as an asset in the marital pot for division, therefore we reverse the trial court's determination on this issue,

and remand for the trial court to divide the marital assets in accordance with our opinion.

## II.   *Spousal Maintenance*

Next, Dan argues that the trial court abused its discretion by ordering him to pay Brenda spousal maintenance in the amount of $400.00 per week, above and beyond her awarded share of the marital estate. Specifically, Dan contends that since Brenda was awarded 70% of the total marital estate, amounting to $1,059,044.00, Brenda is self-sufficient as a result of the marital distribution, and therefore, it was unnecessary for the trial court to order a spousal maintenance award in the amount of $400.00 per week. Consequently, Dan claims that because Brenda was awarded sufficient marital assets to provide for the discrepancy between her ability to earn money and her expenses, Brenda's ability to be self-sufficient is not materially affected. Essentially, Dan asserts that Brenda is self-sufficient as a result of the interest generated from the marital assets she received from the distribution and her $10,000.00 per year earning capacity, therefore, a spousal maintenance award is clearly erroneous.

Indiana Code § 31-15-7-2(1) provides:

If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.

The trial court may make an award of spousal maintenance upon the finding that a spouse's self-supporting ability is materially impaired. *Fuehrer v. Fuehrer*, 651 N.E.2d 1171, 1174 (Ind.Ct. App.1995), *reh'g denied, trans. denied.* The trial court's power to make an award

of maintenance is wholly within its discretion, and we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances of the case. *Id.* However, even if a trial court finds that a spouse's incapacity materially affects her self-supportive ability, a maintenance award is not mandatory. *In re Marriage of Richmond,* 605 N.E.2d 226, 228 (Ind.Ct.App.1992). Nevertheless, in determining whether a trial court has abused its discretion in a spousal maintenance determination, this court will presume that the trial court properly considered the applicable statutory factors in reaching its decision. *Moore v. Moore,* 695 N.E.2d 1004, 1007 (Ind.Ct.App.1998). The presumption that the trial court correctly applied the law in making an award of spousal maintenance is one of the strongest presumptions applicable to the consideration of a case on appeal. *Fuehrer,* 651 N.E.2d at 1174.

To award spousal maintenance under Ind.Code § 31–15–7–2(1), the trial court must first make a threshold determination that (1) a spouse is physically or mentally incapacitated and (2) the incapacity materially affects the spouse's self-supportive ability. If the trial court finds that a spouse is incapacitated, it then has the discretion to award maintenance. *Marriage of Richmond,* 605 N.E.2d at 228. Therefore, our task is limited to determining whether there is sufficient evidence to support the trial court's judgment.

Here, pursuant to the Dissolution Decree, the trial court ordered that:

6. Husband shall pay Wife the sum of $400.00 per week as and for maintenance through the Office of the Clerk of the Porter Superior Court and only through the Clerk's Office. Husband shall not receive any credit for any payments not made through the Clerk's Office. Further, Husband shall be responsible for and shall maintain in full force and effect at his sole expense through his employer, via COBRA, health insurance coverage for Wife. Said policy shall be for the same coverages now in force and effect under Husband's present health insurance policy. Husband shall not reduce, diminish, or do anything to affect Wife's coverage that would decrease or in any way limit her health insurance coverage. Further, Husband shall pay all of Wife's reasonable and necessary non-insurance covered medical, hospital, dental, optical, psychological and prescription pharmaceutical expenses pending further court order.

(R. 122).

In the present case, the evidence in the light most favorable to the trial court's judgment reveals that, in April 1999, Dr. Cheryl Short, M.D., a Board Certified Obstetrician, diagnosed Brenda as having both endometrial cancer and ovarian cancer. On April 27, 1999, Brenda underwent a hysterectomy that involved removal of her uterus, cervix, both ovaries, and fallopian tubes, and dissection of both pelvic lymph nodes. The surgery caused Brenda to undergo a surgical menopause, and as a result of the cancer, Brenda is unable to take normal estrogen replacement medication. Therefore, Brenda suffers hot flashes, night sweats, vaginal dryness, and cognitive dysfunction. Moreover, in Dr. Short's deposition, she stated that Brenda's cognitive dysfunction resulted in memory loss, forgetfulness, a decrease in concentration, as well as suffering from an inability to control her emotions. As Brenda's treating physician, Dr. Short recommended that Brenda decrease her work hours to twenty hours per week indefinitely, due to the incapacity she suffers as a consequence of her cancer treatment. Furthermore, at Dan's request, Brenda underwent an examina-

tion and testing by Dr. Gary Durak, which supported Brenda's claim that she suffers from physical and/or mental incapacities that materially affect her ability to support herself. Specifically, Dr. Durak's medical report stated that Brenda is functioning at less than what her intellectual capacities would predict. Moreover, Dr. Durak confirmed that Brenda suffers from depression and also recommended that she limit her work hours to twenty hours per week as a result of the impairment of her cognitive processing by both memory/concentration impairment and emotional distress. (R. 104). Thus, the trial court found that:

> as a result of [Brenda] undergoing surgery to treat her endometrial and ovarian cancers she has suffered a surgical menopause which cannot be treated with estrogen replacement medication for at least three years . . . . this condition has physically and mentally incapacitated [Brenda] to the extent that her ability to support herself is materially affected and that she is entitled to maintenance. [Brenda's] present earning ability is $10,000.00 per year. [Brenda's] monthly expenses (excluding medical) are approximately $1,500.00 per month.

(R. 105).

The trial court's award of spousal maintenance is amply supported by evidence that Brenda's illness has left her physically and mentally incapacitated to the extent that her ability to support herself is materially affected. Therefore, the trial court's award is authorized by the factors delineated in Ind.Code § 31–15–7–2(1), and is not clearly against the logic and effect of the facts and circumstances. We find no error.

### III. *Violation of Agreed Order*

Dan next argues that the trial court erred by failing to apportion the expenditures he and his former wife made for their children's education during the pendency of this divorce proceeding. Specifically, Dan challenges the trial court's Findings number 26, 38, and 39. In particular, these Findings state as follows:

26. ***Husband's Use of Marital Money.*** Wife claims that Husband withdrew certain marital monies from various bank accounts without her knowledge and consent, diverted monies from the marital estate and used marital monies for purposes unrelated to the marriage. Wife claims that during the pendency of this action, Husband continued to remove marital monies from the marital estate. The monies removed by Husband from the marital estate total $107,-355.000 (Petitioner's Exhibits 16, 32). At trial, Husband admitted removing the $107,355.00 from the marital estate but denies that the removal was wrongful.

The Court finds that on September 30, 1997, a joint preliminary injunction was entered at the time of the filing of the Petition for Legal Separation. On July 24, 1998, at the time the cause was converted to a divorce proceeding, another Joint Mutual Restraining Order was entered. Both of these Restraining Orders prohibited both parties from transferring, encumbering, concealing, or disposing of marital property except in the usual course of business or for the necessities of life without written consent of the parties or permission of the Court. On March 3, 1999, and Agreed Provisional Order was entered providing in part as follows:

2. The parties agree to account to each other for all monies spent from joint accounts since the filing of this proceeding.

3. The parties further agree that no monies will be withdrawn in the future unless done by their mutual

consent or upon order of this Court.

. . . .

6. The parties agree that both shall be restrained from and shall not waste, conceal, encumber, or sell any property.

Not only has Husband violated these orders, he has failed to provide an adequate accounting, as required by paragraph # 2 of the Provisional Order, for the monies removed from the joint accounts by Husband since the filing of this proceeding. Moreover, Husband's claim that he was entitled to use marital monies to pay for the children's education is contrary to the terms of paragraph # 1 of the Agreed Provisional Order:

1. Without prejudice to either party, it is agreed that Husband will pay provisionally the future educational expenses for Blair A. Bizik and Blaine Bizik. It is understood that unless the parties agree, the court shall at final hearing determine what portion of the educational expenses, if any, shall be allocated to Wife.

Husband's unilateral decision to invade the marital estate and purportedly use certain monies for payment of the children's educational expenses was in violation of this Court's Agreed Provisional Order.

The assets in Petitioner's Exhibits # 16 and # 32 are already included in the valuation of the marital estate.

\* \* \*

38. Husband's claim for a credit to set off against the value of the life insurance policies for the amount of post-separation premiums that he paid is denied. Husband's claim for a credit against the value of his 401(k) plan for post-separation credits should be granted to the extent that Husband can substantiate through documents the actual payment by Husband out of his earnings of his post-separation 401(k) contributions.

39. Husband claims that he has spent $122,922.00 for expenses for Blaine and Blair during the pendency of this action. Husband contends that some of the expenses were for the children's education and some were personal expenses for the children. Some of the monies Husband used for the payment of the expenses which he seeks reimbursement were based upon Husband's own testimony, marital monies he removed from the marital estate in violation of the Court's Restraining Orders and in violation of the Provisional Order requiring Husband to pay for the children's educational expenses. Husband has not supplied a breakdown of the amount of money that came from the marital estate versus the amount of money that Husband paid from his own post-separation earnings. Husband has not supplied any canceled checks or receipts to substantiate the claimed expenditures in Respondent's Exhibit D–1. Wife's Exhibit supporting her higher educational contributions for the children's college expenses was in large part supported by canceled checks (Petitioner's Exhibit # 21). Husband's claim for reimbursement for the expenses listed in Respondent's Exhibit D–1 is denied.

(R. 108–110, 115–116) (emphasis in original).

Essentially, Dan contends that his use of the marital monies to pay for the children's educational expenses was an ordinary expenditure in the usual course of business or for the necessities of life. Specifically, Dan relies upon this Court's holding in *In re Marriage of Coyle,* 671 N.E.2d 938 (Ind.Ct.App.1996), where we stated

that, "money spent for a child's education, transportation and housing does not usually constitute a waste or misuse of marital assets. These are the kinds of expenditures that parents typically make for their children." *Id.* at 944. Thus, Dan wishes for us to remand this matter for the trial court to reevaluate the amount of college expenses incurred by both parties and apportion the expenses accordingly. This we will not do. Dan misses the point of the trial court's ruling on this issue. The trial court did not find that Dan misused the marital monies in a manner not ·in the usual course of business or for the necessities of life. Instead, the trial court simply found that Dan, by removing $107,355.00 from the martial estate without Brenda's written consent or permission of the trial court, thereby violated two separate restraining orders, and an Agreed Provisional Order. Moreover, by failing to provide an adequate accounting for the monies removed from the joint accounts, a fact to which Dan concedes, the trial court lacked evidence to substantiate Dan's "necessity of life" claim.

## IV. *Set off*

Dan next claims that he is entitled to a set off from the value of a State Farm Bond Fund in the amount of $23,000.00. Specifically, Dan contends that because the $23,000.00 were funds he received from his mother, and was not property owned by him or Brenda, the $23,000.00 was not part of the marital estate. For his argument, Dan relies upon this Court's decision in *Riddle v. Riddle,* 566 N.E.2d 78 (Ind.Ct. App.1991), *trans. denied,* where we held that, "for an asset to come within the ambit of 'property,' one or both of the spouses must have a vested present interest in the asset." *Id.* at 81. However, the record reflects that Dan failed to provide the trial court with evidence that he did not have a present vested interest in the

$23,000.00. With respect to this issue the trial court found as follows:

> 34. ***State Farm Bond Fund (# 602109011).*** Husband does not disagree with Wife's $220,507.00 value for this asset. Husband, instead, seeks to set off against the value the sum of $23,000.00 for monies he claims were received from his mother. First, Husband does not supply the Court with a check showing the source of the deposit even though Husband knew on December 14, 1999 that Wife was claiming that Husband had misappropriated and dissipated marital monies. Further, even if it is true that Husband received the above mentioned $23,000.00 from his mother the $23,000.00 is still included in the parties' marital estate.

(R. 114) (emphasis in original).

Nevertheless, Dan argues that Exhibit A–7 reveals that on June 25, 1996, a check in the amount of $23,000.00 was drawn on an account with Mercantile National Bank of Indiana, with Andrew and Helen Bizik as Remitter, and paid to the order of Dan Bizik. Moreover, Exhibit A–7 also reveals that on June 25, 1996, Dan deposited $23,000.00 into a State Farm Municipal Bond Fund.

■ However, Dan fails to direct us to evidence that the $23,000.00 was money owned by his mother. Instead, the record merely reveals that Dan received $23,000.00 from his mother and subsequently deposited that amount into a State Farm Municipal Bond Fund. Therefore, we agree with the trial court that even if it is true that Dan received the $23,000.00 from his mother, that money is still included in the marital estate. *See Hurst v. Hurst,* 676 N.E.2d 413, 415 (Ind.Ct.App. 1997) (stating that all property owned by the parties, whether acquired prior to the

marriage or through inheritance, is marital property).

### V. *Deviation from Equal Division*

Finally, Dan argues that the trial court abused its discretion by deviating from the presumption of dividing the marital estate equally, and instead awarding Brenda 70% of the marital estate. Specifically, Dan contends that Ind.Code § 31–15–7–5 requires a trial court to divide marital property equally, in a just and reasonable manner, and that here the trial court failed to do so because "the trial court has already calculated the disparity of the parties' earnings and economic circumstances by awarding maintenance, such that this factor is calculated both in the determination of maintenance and in the distribution of assets." (Appellant's Brief at 29). Ind. Code § 31–15–7–5 provides as follows:

Presumption for equal division of marital property; rebuttal

Sec. 5. The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

In his brief, Dan analyzes each of the above factors in an effort to argue that the trial court improperly considered each factor. However, because we find that the trial court properly and adequately considered each of the factors to support a deviation from the presumption of equal property division, we will not address Dan's arguments with respect to each factor. With respect to the division of the marital estate, the trial court found as follows:

40. The evidence has shown that during the parties' 32 year marriage, Wife supported Husband in his efforts to advance within the State Farm Insurance industry. This required Wife to relocate with Husband as he advanced through State Farm Insurance. Wife also supported Husband at work by cleaning the office, making phone calls, and supporting Husband by attending and hosting various social functions for State Farm.

41. The Court further finds that there is a tremendous disparity in the parties' present earnings and earning ability in that Husband earns at least 15 times what Wife is capable of earning at present. (Petitioner's Exhibit # 1). The disparity between Husband's earnings and earning ability and the earnings and earning ability of Wife is exacerbated when considering Wife's work

limitations and restrictions due to the consequences of her cancer treatment.

42. During the course of this proceeding, Husband removed monies from the marital estate in excess of $100,000.00. Husband has used the monies for his own personal benefit or business interests. The monies Husband has removed from the marital estate have diminished the value of the marital estate by virtue of the interest that would have accrued to the aforesaid monies had the monies been left in the marital estate.

43. The Court further finds that Husband's economic circumstances at the time the disposition of the property is to become effective is much better than Wife's. Husband continues in his long term business relationship with State Farm Insurance earning substantial sums of money whereas Wife is having to "start over" at age 53 in a new vocation with limitations on her mental and physical ability and capacity. At the time of final hearing, Wife had minimal money whereas Husband had taken marital monies and invested at least $60,555.00 of the monies in a real estate deal and had also done this via a § 1031 tax free exchange so that the monies being invested by Husband in the real estate deal have no present tax consequences. Husband never consulted Wife about this nor did he seek prior Court approval.

44. The foregoing factors support a deviation from the presumption of an equal division.

(R. 116–117). Moreover, the trial court stated that:

49. The Court is aware that Husband will be paying both maintenance and property settlement payments to Wife. These payments will total over $45,000.00 in the first year. However, Husband will be receiving a tax deduction for the maintenance payments made to Wife. Further, the payments being made by Husband to Wife constitute only one-third of his income, after subtracting business expenses for which Husband is reimbursed. Further, the parties' children have now completed their education. One child has graduated from law school and the other is now working as a mechanic after graduating from Nashville Auto Diesel College, thus reducing the significant expenses Husband has been paying for the children. (R. 120).

Therefore, we find that the trial court properly considered, found and concluded with respect to each factor of Ind.Code § 31–15–7–5 in order to deviate from the presumption of equal marital property division, thereby awarding Brenda 70% of the marital estate. Moreover, the trial court adequately considered the act that pursuant to its order, Dan is required to pay both maintenance and property settlements to Brenda.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred by including Dan's Executive Supplemental Retirement Plan in the marital estate, and thereby awarding Brenda seventy percent (70%) of the value of said plan. Therefore, we reverse the trial court's conclusion on this issue alone and remand for the trial court to remove Dan's Executive Supplemental Plan from the distribution of marital assets.

We further conclude that the trial court did not abuse its discretion by ordering Dan to pay Brenda spousal maintenance in the amount of $400.00 per week, above and beyond her awarded share of the marital estate in the amount of $1,059,044.00, the trial court properly found that Dan's deci-

sion to invade the martial estate and use certain marital monies for payment of the children's educational expenses was in violation of the trial court's Agreed Provisional Order, the trial court properly denied Dan's claim to set off the marital estate in the sum of $23,000.00, for monies he claims was received from his mother, and the trial court did not abuse its discretion by deviating form the presumption of an equal marital property division, thereby awarding Brenda 70% of the marital estate.

Affirmed in part, and reversed and remanded in part.

FRIEDLANDER, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

While I agree that it is appropriate to order the trial court to "remove Dan's Executive Supplemental Plan from the distribution of marital assets" (Op. at 774), I do not believe it is correct to state that the court included the Plan as a marital asset.

To be sure, the distribution portion of the decree indicates that the wife is to receive 70% and the husband 30% of the Plan. However, it is clear that in adding all the assets subject to distribution, the court did not include the Supplemental Plan. The total marital estate subject to distribution is $1,512,920 and includes no amount attributable to the unvested Plan. The court stated that wife is entitled to $1,059,044 which is 70% of the total marital estate. Again, this includes no distribution of the Plan either to the husband or the wife. In this regard, I would merely order the trial court to strike the portion of the decree which purports to distribute the Plan.