Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**CURTIS E. SHIRLEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**DEBORAH M. AGARD**
Indianapolis, Indiana

**KATHRYN W. WILLIAMS**
Zionsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE MARRIAGE OF: | ) |
| | ) |
| DONALD J. SHAUGHNESSY, JR., | ) |
| | ) |
|     Appellant-Respondent-<br>    Counter/Petitioner, | ) <br> ) <br> ) |
| | ) |
|         vs. | )    No. 06A01-1107-DR-347 |
| | ) |
| LYN A. SHAUGHNESSY, | ) |
| | ) |
|     Appellee-Petitioner-<br>    Counter/Respondent. | ) <br> ) |

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Mark Smith, Special Judge
Cause No. 06D01-1007-DR-399

**March 22, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

<u>STATEMENT OF THE CASE</u>

Appellant-Respondent/Counter-Petitioner, Donald J. Shaughnessy, Jr. (Donald), appeals the trial court's distribution of marital property following the dissolution of his marriage to Appellee-Petitioner/Counter-Respondent, Lyn A. Schroeter (Lyn).

We affirm.

<u>ISSUE</u>

Donald raises one issue on appeal, which we restate as follows: Whether the trial court erred when it declined to order an equal division of the marital estate.

<u>FACTS AND PROCEDURAL HISTORY</u>

Donald and Lyn were married on July 25, 2007. Prior to their marriage, Donald worked as a carpenter. However, he suffers from bi-lateral carpal tunnel syndrome and last worked in 1995 when the Social Security Administration determined that he was disabled. Since that time, he has received income from the Indiana Carpenter Pension Fund and Social Security Disability. Lyn was trained as a registered nurse prior to their marriage, although she has not worked in that capacity for approximately twenty-eight years. Instead, she receives income from the interest in her investment accounts. She also owned a landscaping business from 1999 to 2002, with a maximum annual income of approximately $7,000.

2

Prior to their marriage, the couple did not sign a pre-marital agreement for religious reasons. At the time of their marriage, Lyn had a net worth of $3,755,471 and Donald had cash assets of $45,586.18, as well as a car loan of $14,122.46. Lyn owned a 2006 Trailblazer and a 1997 Chevy Silverado Truck that were not included in the calculation of her net worth.

Lyn's home, which she had purchased in 2000 for $400,000, became the marital home after they married, although Lyn never added Donald's name to the deed. Throughout their marriage, Lyn paid all of the mortgage payments on the property and Donald performed maintenance around the house. He was able to build work benches, bridges, and fire pits; chop wood; mulch the yard; clear snow and leaves; mow the grass; paint; trim trees; and chop, split, and stack logs as long as he was able to work at his own pace.

Craig Westrick (Westrick) was Lyn's financial advisor throughout the marriage. She met with him approximately every six months and Donald accompanied her to many of these meetings. Donald did not want Lyn to add his name to her accounts due to concerns over a child support obligation. Lyn complied with his wishes and did not add his name to the accounts, even after his child support obligation terminated in 2008. Throughout their marriage, Donald and Lyn received monthly distributions from the investment accounts, which they spent on living expenses. They received $10,000 per month initially, but at some point they reduced the distributions to $8,000 per month to account for poor market conditions.

3

Lyn was also the primary beneficiary of a charitable remainder trust. She was an income beneficiary only and could not invade the corpus of the trust without court intervention. The trust was created prior to Lyn and Donald's marriage and distributes 8.85% of the principal each year to Lyn for the remainder of her life. Lyn received $37,016 from the trust in 2009 and $50,830 from the trust in 2010. During their marriage, Lyn changed the name of the trust to the "Don and Lyn A. Shaughnessy Charitable Fund."

In December of 2007, Lyn created a new estate plan. She signed a new will, which poured everything into a trust. The estate and trust plan called for the trustee to distribute $2,000,000 to Lyn's surviving parents and children, with the remainder to be distributed to her surviving husband. The will further identified Donald as the beneficiary of Lyn's personal property.

During their marriage, Donald added Lyn's name to his checking account, and Lyn added Donald's name to the National Christian Foundation (NCF), a charitable organization, as a secondary advisor. Pursuant to this arrangement, Donald could not make withdrawals, was limited in his ability to direct charitable donations, and remained subject to Lyn's authority to unilaterally remove him as an advisor. Other than Donald's checking account and the NCF, the parties did not hold any accounts in both of their names. In addition, neither Donald nor Lyn contributed to any of their accounts during the marriage, although they did file a joint tax return.

4

On July 1, 2010, when Lyn was 56 years old and Donald was 52 years old, Lyn filed a petition for the dissolution of their marriage. On July 12, 2010, Donald filed a counter-petition in which he also requested the dissolution of their marriage, but additionally requested spousal maintenance and support, attorney fees, expenses, and costs. At the time of the divorce, Lyn's net worth had declined to $2,754,164 due to a downturn in the market during the course of their marriage. Dan Moore Real Estate Services, Inc. (Dan Moore) appraised their marital residence at the time of the dissolution of the marriage and found that it was valued at $460,000, with a mortgage balance of $209,207. Dan Moore also appraised Donald and Lyn's personal property and found that Donald's property was valued at $68,613, and Lyn's property was valued at $20,098. Donald's property included an RV that was purchased for $65,000 and appraised to have a retail price of $60,932. Lyn had contributed $50,000 towards the purchase of the RV, and Donald had contributed $15,000.

On March 9, 2011, Donald and Lyn appeared for a final hearing and agreed to a decree of dissolution, which the trial court signed on March 11, 2011. On May 10, 2011, the trial court held a hearing concerning the division of marital property. On July 1, 2011, the trial court issued findings of fact, conclusions of law, and a final judgment declaring that: (1) the marital residence would remain property of Lyn, free of all claims by Donald; (2) each party would retain the personal property in his or her possession; (3) Donald would retain property of the 2009 Toyota Tacoma truck and the parties' RV, including any debt thereon; (4) each of the parties would retain sole ownership of the

5

investment, retirement, pension, and other accounts that they had brought into the marriage; and (5) the parties would remain solely responsible for any credit card debts or other liabilities in their own names. The trial court further denied Donald's request for spousal maintenance and ordered Lyn to pay $31,500 towards Donald's attorney fees within 120 days.

Donald now appeals. Additional facts will be provided as necessary.

DISCUSSION

Donald argues that the trial court abused its discretion in dividing the marital estate because it failed to adequately consider his economic circumstances, disability, and lack of earning ability. According to Donald, none of the precedents the trial court cited "justify such a rule where the other spouse would be left with near nothing, was disabled, and had no earning ability." (Appellant's Br. p. 12).

Initially, we note that where, as here, a trial court has entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Bizik v. Bizik,* 753 N.E.2d 762, 766 (Ind. Ct. App. 2001), *trans. denied.* Findings are clearly erroneous when the record does not contain facts to support them, either directly or by inference. *Id.* The judgment is clearly erroneous if the findings do not support the conclusions of law or the conclusions of law do not support the judgment. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Bloodgood v. Bloodgood,* 679 N.E.2d

6

953, 956 (Ind. Ct. App. 1997).  In reviewing a trial court's disposition of the marital

assets, we focus on what the court did, not what it could have done.  *Id.* at 957.

Ind. Code § 31-15-7-4(a) provides that in an action for dissolution of marriage, the

trial court shall divide the property of the parties, regardless of whether it was:

(1) owned by either spouse before the marriage;
(2) acquired by either spouse in his or her own right;
    (A) after the marriage; and
    (B) before final separation of the parties; or
(3) acquired by their joint efforts.

In dividing the marital property, there is a presumption that an equal division between the

parties is just and reasonable.  *Montgomery v. Faust,* 910 N.E.2d 234, 238 (Ind. Ct. App.

2009).  However, this presumption may be rebutted by evidence that an equal division

would not be just and reasonable.  *Id.*  This can include evidence of the following factors:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
(2) The extent to which the property was acquired by each spouse:
    (A) before the marriage; or
    (B) through inheritance or gift.
(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
(5) The earnings or earning ability of the parties as related to:
    (A) a final division of property; and
    (B) a final determination of the property rights of the parties.

I.C. § 31-15-7-5.  In dividing marital property, the trial court must consider all of these

factors, but it is not required to explicitly address each one in every case.  *Montgomery,*

7

910 N.E.2d at 239. To the contrary, we presume that the trial court considered each factor. *Id.* This is one of the strongest presumptions applicable to our consideration on appeal and must be overcome by a party challenging the trial court's division of property. *Eye v. Eye,* 849 N.E.2d 698, 701 (Ind. Ct. App. 2006).

Here, the trial court issued the following conclusions of law:

47. The court concludes that Lyn has rebutted the presumption of an equal division of the marital estate for the following reasons:
> (a) Lyn brought nearly all of the assets of the marital estate into the marriage and paid all of the joint expenses, including medical and dental expenses for herself and Don[ald] from her assets throughout the marriage;
> (b) This was a marriage of short duration with no children;
> (c) There was no co-mingling of assets;
> (d) Don[ald's] only regular contributions to the monthly household expenses during the marriage were overwhelmingly intended for payments to cover his own Visa charges;
> (e) It was undisputed that Don[ald] made no financial contribution to any of the Ron Blue accounts.

48. The essential inquiry with regard to spousal maintenance is whether the incapacitated spouse can support himself. Don[ald] introduced evidence from a Vocational Rehabilitation expert with regard to what he would have earned now and throughout his lifetime as a Union Carpenter. Don[ald] testified that he was no longer able to do this type of work and had not worked in that capacity for more than a dozen years prior to his marriage to Lyn. Furthermore, there is neither statutory nor case law authority that would allow this court to base spousal maintenance on a party's *former* or *potential* income. For Lyn to be expected to provide Don[ald] with income equivalent to what he *would* have earned *if* he had still been able to perform a job that he had not held for *more than a decade* before she even met him is simply unsupportable under the law. Don[ald's] income stream from his Indiana Carpenter's pension and Social Security Disability was not interrupted by his marriage to Lyn. Therefore, the [c]ourt finds that Don[ald's] request for spousal maintenance should be denied.

8

(Appellant's App. p. 17). Since the trial court only mentioned his disability and earning capacity with respect to spousal maintenance, not the parties' division of property, Donald argues that it is clear that the trial court failed to consider his economic circumstances, disability, and lack of earning capacity with respect to the property division.

We do not agree. In order to deviate from the presumption that a marital estate should be divided equally, a trial court must consider all of the factors listed in I.C. § 31-15-7-5. *Montgomery,* 910 N.E.2d at 238-39. However, a trial court is not required to explicitly address each factor, and it is one of our strongest presumptions on appeal that the trial court did consider each factor. *Eye,* 849 N.E.2d at 701. We acknowledge, as Donald notes, that there is a distinction between the issue of whether a disability warrants a larger property division and whether a disability warrants a provision for maintenance of an incapacitated spouse. *See Newman v. Newman,* 355 N.E.2d 867 (Ind. Ct. App. 1976). Nevertheless, Conclusion #48 indicates that the trial court extensively contemplated Donald's disability and economic circumstances, even if the trial court explicitly stated its findings in terms of spousal maintenance rather than property division. From this paragraph, we can infer that the trial court used the same reasoning with respect to the parties' property division. Thus, we conclude that Donald has failed to rebut our presumption that the trial court appropriately considered the third and fifth factors of I.C. § 31-15-7-5—the economic circumstances of each spouse and the earnings or earning ability of each spouse.

Finally, Donald seems to argue that the trial court erred because it did not clearly explain how it determined the exact percentage allocations it awarded to Lyn and Donald respectively. For instance, the trial court did not specify why it awarded Lyn 97% of the estate instead of 90% or 80%. However, we do not find precedent for Donald's contention that a trial court must clarify its choice of allocation once it has determined that the presumption of equal division has been rebutted, and the cases Don cites in support are inapposite. In *Chase,* we remanded because we determined that the trial court did not properly state its reasons for deviating from the presumption of an equal division; we did not otherwise address percentage allocation. *Chase v. Chase,* 690 N.E.2d 753, 756 (Ind. Ct. App. 1998). Likewise, *Nornes* concerned the completely separate issue of whether student loans constitute marital obligations. *Nornes v. Nornes,* 884 N.E.2d 886 (Ind. Ct. App. 2008). Finally, the trial court in *Erb* failed to articulate its calculation of the marital estate, not its division of it. *Erb v. Erb,* 815 N.E.2d 1027 (Ind. Ct. App. 2004). Instead, we note that a trial court has discretion in dividing marital property, and under the circumstances before us, we do not find any reason to restrict this discretion as Donald has suggested. *Hatten v. Hatten,* 825 N.E.2d 791. Accordingly, we conclude that the trial court did not err in deviating from the presumption of equal division of the marital estate.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err when it deviated from an equal division of the marital estate.

10

Affirmed.

BARNES, J. and BRADFORD, J. concur