### In re the MARRIAGE OF Anita C. COYLE, Appellant–Respondent,

### and

### John A. Coyle, Appellee–Petitioner.

### No. 07A01–9510–CV–335.

Court of Appeals of Indiana.

Oct. 30, 1996.

Eric N. Allen, Brand & Allen, Greenfield, for Appellant–Respondent.

Thomas M. Barr, Nashville, for Appellee–Petitioner.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In this case we are asked to consider the meaning of dissipation of property under the Dissolution of Marriage Act. Anita C. Coyle appeals from the trial court's decree which dissolved her marriage to John A. Coyle. She disputes the trial court's division of the marital estate as unjust and unreasonable

and, in particular, challenges its finding that she had dissipated marital property.

We remand with instructions.

## ISSUES

We consolidate and restate the issues presented as:

(1) What species of conduct constitutes a dissipation of property under the Dissolution of Marriage Act, and

(2) Whether the trial court abused its discretion when it divided the marital estate.

## FACTS

John and Anita were married in 1983. Although the parties did not have children together, both had children from prior marriages. John's son and Anita's daughter lived with the couple for a period of time. Both John and Anita brought assets into the marriage, and they earned nearly equal incomes during the time they were married. In 1993, John filed a petition for dissolution of marriage. After hearings, the trial court entered its detailed Findings of Fact, Conclusions of Law and Decree of Marriage Dissolution on June 28, 1995.

The court found that Anita had dissipated marital property.[1] Specifically, $7,000.00 of marital funds was used to help pay for college expenses for Anita's daughter Julie. Another $10,000.00 was spent over a period of several years to assist Julie with the purchase of three used automobiles. The court found that Anita chose not to pursue a contribution from Julie's father, a 30–year Chrysler employee, despite her "absolute legal entitlement" to do so. Although John testified that these expenditures were loans, neither he nor Anita included any loans receivable on their respective financial declarations.

The court also found dissipation in the lost opportunity to realize interest income on a contract that Anita had entered into with her daughter Christine and her husband for the sale of Anita's home in Hancock County. The initial five-year agreement, made before Anita's marriage to John, required the purchasers to make monthly payments to Anita equal to her mortgage payments, and the entire balance ("balloon payment") was due in December 15, 1987. Anita was not paid interest under the terms of that contract.

At the end of five years, Anita allowed Christine and her husband to continue installment payments under the terms of the original contract. The same parties entered into a second contract which extended the balloon payment date to December 15, 1993, and they later moved the balloon payment to December 15, 1996. John, who was not a party to the contract, had objected to renewal of the contract without interest. The trial court found that disagreement over this matter was partially responsible for the dissolution. The court then charged Anita with $11,163.00 in dissipation for the interest that would have been earned on the contract from December 15, 1987, the date that the original balloon payment was due, to the date of separation.

Based upon those determinations and other factors, the court awarded John 63% and Anita 37% of the total marital estate valued at $501,720.00. Anita appeals from that distribution.

## DISCUSSION AND DECISION

### Standard of Review

█ The trial court must divide the property of the parties in a just and reasonable manner, and that includes property owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to final separation of the parties, or acquired by their joint efforts. IND.CODE § 31–1–11.5–11(b); *Castaneda v. Castaneda,* 615 N.E.2d 467, 469 (Ind.Ct.App.1993). An equal division of the marital property is presumed to be just and reasonable. IND.CODE § 31–1–11.5–11(c). *Cowden v. Cowden,* 661 N.E.2d 894, 895 (Ind.Ct.App.1996). However, that presumption may be rebutted by a

---

1. The trial court also found that John had dissipated $3,950.00 in marital assets for his sister. Neither party appeals that finding.

party who presents relevant evidence, including evidence of the following factors:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

(4) *The conduct of the parties during the marriage as related to the disposition or dissipation of their property.*

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

I.C. § 31–1–11.5–11(c) (emphasis added); *Cowden,* 661 N.E.2d at 896. The party challenging the trial court's property division must overcome a strong presumption that the court considered and complied with the applicable statute. *Hodowal v. Hodowal,* 627 N.E.2d 869, 871 (Ind.Ct.App.1994), *trans. denied.* That presumption is one of the strongest presumptions applicable to our consideration on appeal. *In re Marriage of Stetler,* 657 N.E.2d 395, 398 (Ind.Ct.App.1995), *trans. denied.*

 Subject to the statutory presumption that an equal distribution of assets is just and reasonable, the division of marital property is committed to the sound discretion of the trial court. *Simpson v. Simpson,* 650 N.E.2d 333, 335 (Ind.Ct.App.1995). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* On review, we may not reweigh the evidence or assess the credibility of witnesses, and we consider only the evidence most favorable to the trial court's disposition of marital property. *Id.*

**Issue One: Dissipation of Assets**

Anita contends that the trial court abused its discretion when it found that she had dissipated marital assets in transactions involving her children. As previously stated, the conduct of the parties during a marriage as related to the disposition or dissipation of their property is a statutory factor that may be used to rebut the presumption that an equal division of the marital property is just and reasonable. *See* IND.CODE § 31–1–11.5–11(c)(4). Dissipation is not defined in the Act. Anita maintains that without a clear legislative or judicial definition of the term, parties to a dissolution are allowed to revisit and dispute "virtually any financial transaction or personal decision affecting finances" made during the marriage in a search for conduct that may be characterized as dissipation. Brief of Appellant at 51.

 Fault is not relevant in dissolution proceedings except as related to the disposition or dissipation of marital assets. *Hunt v. Hunt,* 645 N.E.2d 634, 637 (Ind.Ct.App.1994). One spouse's claim of improvident spending by the other spouse can be a powerful weapon in an attempt to secure a larger share of the marital estate. However, a trial court presiding over a dissolution proceeding in which dissipation is an issue should not be required to perform an audit of expenditures made during the marriage in order to determine which spouse was the more prudent investor and spender. *See Rosenfeld v. Rosenfeld,* 597 So.2d 835, 837 (Fla.Dist.Ct.App. 1992). The institution of marriage would be ill-served if spouses were encouraged to maintain a continuous record of expenditures and transactions during the marriage for use in the event they are ever divorced.

This court has reviewed findings of dissipation in various contexts under an abuse of discretion standard. *See e.g., Stutz v. Stutz,* 556 N.E.2d 1346, 1349–50 (Ind.Ct.App.1990) (wife's disposing of marital assets at phenomenal rate without regard to consequences of her actions justified deviation from equal division of property); *Planert v. Planert,* 478 N.E.2d 1251, 1253–54 (Ind.Ct.App.1985) (husband's drinking problem which was major contributing factor to failure of business justified unequal division of marital estate).

While those cases have necessarily turned on specific facts, in this case, we shall consider more generally the nature of "dissipation" as that term is used in the Dissolution of Marriage Act.

■ Our analysis begins with the cardinal rule of statutory construction that undefined words and phrases in a statute are to be given their plain, ordinary and usual meaning. IND.CODE § 1–1–4–1(1). Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *State Bd. of Accounts v. Indiana Univ. Found.*, 647 N.E.2d 342, 347 (Ind.Ct.App.1995), *trans. denied.* The term "dissipate" is defined as "[t]o destroy or waste, as to expend funds foolishly." BLACK'S LAW DICTIONARY 473 (6th ed. 1990).

■ Waste and misuse are the hallmarks of dissipation. Our legislature intended that the term carry its common meaning denoting "foolish" or "aimless" spending. *In re Marriage of Roberts,* 670 N.E.2d 72, 76 (Ind.Ct. App.1996). Dissipation has also been described as the frivolous, unjustified spending of marital assets which includes the concealment and misuse of marital property. *Volesky v. Volesky*, 412 N.W.2d 750, 752–53 (Minn.Ct.App.1987). It generally involves the use or diminution of the marital estate for a purpose unrelated to the marriage and does not include the use of marital property to meet routine financial obligations. *See id.*

■ Whether a dissipation has occurred cannot be determined by applying one factor. The proper inquiry requires the trial court to weigh various considerations. While intent is not an essential element of dissipation, intent to hide, divert or otherwise deplete the marital estate is relevant. *See, e.g., Kaply v. Kaply*, 453 N.E.2d 331, 334–35 (Ind. Ct.App.1983) (court properly considered husband's bigamous relationship which diverted assets from marriage). A trial court should also consider whether the expenditure benefited the marital enterprise or was made for a purpose entirely unrelated to the marriage. However the fact that one spouse or the marriage itself does not benefit directly from an expenditure does not, standing alone, require a finding that a dissipation of marital

assets has occurred. *See, e.g., In re Marriage of Roberts*, 670 N.E.2d at 76 (money expended in order to secure law degree was not dissipated even though other spouse did not receive benefits expected therefrom). Each party to a marriage typically spends some part of marital funds for his or her own purposes.

[11, 12] The statute directs the trial court to examine the conduct of the parties "during the marriage," I.C. § 31–1–11.5–11(c)(4), so that the court is not limited to an examination of any particular time period. *See In re Marriage of Sloss*, 526 N.E.2d 1036, 1040 (Ind.Ct.App.1988) (trial court must consider both pre-separation and post-separation dissipation of assets). However, transactions which are remote in time and effect, and where many years of marriage have intervened, may be deemed insignificant, while transactions which occur during the breakdown of the marriage, just prior to filing a petition or during the pendency of an action, may require heightened scrutiny. *See, e.g., Melnik v. Melnik*, 413 N.E.2d 969, 972–73 (Ind.Ct.App.1980) (gift made by wife to parties' grandchildren between separation and divorce is dissipation). The court should also assess whether the expenditure was excessive or *de minimis*. *Compare Stutz*, 556 N.E.2d at 1349–50 (wife's disposing of parties' personal assets at phenomenal rate considered dissipation), with *Hunt*, 645 N.E.2d at 637 (evidence of only nominal charges for telephone calls does not amount to waste of marital assets).

■ When considering a spouse's claim of dissipation, the trial court should exercise caution in determining that an asset has been wasted or misused. The non-dissipating party's participation in or consent to the expenditure is a relevant consideration. However, disagreements over the use of money can occur in any marriage. Even a sharp disagreement between spouses over the wisdom of an expenditure, without more, does not render that expenditure a dissipation of marital assets. While the presence or absence of dissipation may be in the eye of the beholder, the trial court must consider the claim objectively. Before a spouse is · chargeable with a dissipation of assets, the

party claiming dissipation must show something more substantial than that the transaction was disputed at the time or that the transaction appears in retrospect to have been unwise. The test is whether the asset was actually wasted or misused.

The present case involves a second, childless marriage where each spouse had children from prior marriages. High rates of divorce and remarriage mean that many children live in a family with a stepparent before they become independent.[2] The term "family" has been described by our court as "a collective body of persons who form one household, under one head, and is subject to one domestic government, and who have reciprocal, natural, and moral duties to support and care for each other." *Cole v. Cole,* 517 N.E.2d 1248, 1250 (Ind.Ct.App.1988). In second or subsequent marriages, it is a fact of life that the parties often provide direct and indirect financial support to each other's children.

█ Here, the trial court found dissipation in the use of marital funds to pay for college and transportation for one of Anita's daughters and in the interest foregone on the land contract sale of Anita's home to another daughter. However, money spent for a child's education, transportation and housing does not usually constitute a waste or misuse of marital assets. These are the kinds of expenditures that parents typically make for their children. While interest is normally charged between parties in an arm's length transaction, transactions between parents and children are not always done at arm's length. Parents often make financial accommodations to give their children a helping hand and a boost in life. Nevertheless, the trial court charged Anita with an opportunity cost, the loss of an opportunity to earn interest, as dissipation of a marital asset.

While dissipation requires a showing of waste or misuse, Indiana Code § 31–1–11.5–11(c)(4) also permits a trial court to deviate from an equal division of marital property if a party presents evidence of "the conduct of the parties during the marriage as related to

the disposition" of their property. Disposition had not been defined by this, or any other, Indiana court. The common meaning of disposition is "transferring to the care or possession of another." BLACK'S LAW DICTIONARY 471 (6th ed. 1990).

When a trial court considers the conduct of the parties as related to the disposition of their marital property, a showing of waste or misuse is not required to support a deviation from an equal division. Under Indiana Code § 31–1–11.5(c)(4), the terms "disposition" and "dissipation" are stated in the disjunctive. The "disposition" of marital property refers not to transfers or transactions that are wasteful, foolish or frivolous but to those that are unusual or out of the ordinary.

The presumption that favors an equal division of marital property can be rebutted by a showing that one party has disposed of marital property in an unusual or extraordinary manner. Thus, under the Act, the conduct of the parties as it relates to either the disposition or the dissipation of marital assets is relevant. Where the disposition of marital property is at issue, the evidence does not require a showing of waste or misuse or of foolish or frivolous conduct to support a deviation from an equal division.

Here, the evidence may support one or more of the trial court's three disputed findings of dissipation. However, we believe the trial court should reconsider its findings concerning the conduct of the parties as related to the disposition or dissipation of their property. Thus, we remand with instructions for the court to hear oral argument and to reconsider its findings of dissipation in a manner not inconsistent with this opinion.

### Issue Two: Division of Marital Property

Anita next asserts that she did not receive a just and reasonable distribution of marital assets. She contends that the trial court erred in its valuation of property and further maintains that, even if she were properly chargeable with dissipating marital property, the court's deviation from equality was great-

---

**2.** It has been estimated that one-fourth of all children born in the last decade will live with a stepparent before reaching the age of 18. "Defi-

nitions of Family: Who's In, Who's Out, and Who Decides," FAMILY MATTERS 20 (Martha Minow ed., 1993) (citation omitted).

ly in excess of any amount dissipated and was, therefore, improper.

■ The trial court ordered that John receive 63% and Anita 37% of the total marital estate valued at $501,720.00. Consequently, the court was required to enter findings explaining why it awarded an unequal division of property. *Lulay v. Lulay,* 591 N.E.2d 154, 155–56 (Ind.Ct.App.1992). The court determined that John had rebutted the presumption of an equal division for the following reasons:

a. John brought Sixty–Four Percent (64%), and Anita brought Thirty–Six Percent (36%), of the assets into the marriage;

b. Both parties were employed during the marriage and produced nearly equal incomes during the marriage;

c. Anita dissipated Seventeen Thousand Dollars ($17,000.00) in marital assets for her daughter and Eleven Thousand One Hundred Sixty–Three Dollars ($11,163.00) in lost interest during the marriage;

d. John dissipated Three Thousand Nine Hundred and Fifty Dollars ($3,950.00) in marital assets for his sister during the marriage;

e. John personally improved the larger tract of Brown County real property, more so than Anita, in that he installed the heating, electrical and plumbing; Anita also improved the property, but not as much as John, by spending two summers on the property without teaching summer school, the income of which was a loss to both parties as a marital asset, and preparing the woodwork and delivery of numerous supplies;

f. John used his entire equity from his Wanamaker residence, of approximately Forty–One Thousand and Two Hundred and Fifty Dollars ($42,250.00) [sic], to improve the larger tract of Brown County land; Anita contributed none of her equity from her Hancock County property toward the Brown County large tract or the marriage at all;

g. Anita chose not to pursue a contribution from Julie's father, to which she had an absolute legal entitlement, for their daughter's transportation and college expenses. . . .

Record at 51–52.

To support her contention that the trial court abused its discretion, Anita first argues that there is insufficient evidence to justify the court's finding that John had brought 64% and Anita 36% of the assets into the marriage. Specifically, Anita charges that there was no evidence of the value of the pensions of the parties and of her teachers' retirement savings at the time of the marriage, and there is insufficient evidence to support John's valuation of his Wanamaker residence.

Regarding the pensions, the trial court noted:

Both parties brought numerous assets into the marriage, including a portion of their respective pensions, *the value of which [at the time of marriage] is undetermined,* . . .

Record at 49 (emphasis added). The court then assigned values to the assets that each party brought into the marriage without reference to the pensions.

■ The burden of producing evidence as to the value of the assets rests upon the parties to the dissolution proceeding. *Neffle v. Neffle,* 483 N.E.2d 767, 770 (Ind.Ct.App. 1985), *trans. denied.* The trial court is not obligated to complete the complex task of valuing assets without such evidence. Because neither party established the date-of-marriage pension values, Anita cannot not now complain that the court failed to include those items in its calculations of date-of-marriage assets.

■ Likewise, we find no reversible error in the trial court's valuation of the Wanamaker real estate that John brought into the marriage. John appraised his property at $40,000.00. An owner of real estate is assumed to possess sufficient acquaintance with his property to estimate its value. *Jordan v. Talaga,* 532 N.E.2d 1174, 1188 (Ind. Ct.App.1989), *trans. denied.* The court valued the property at $41,250.00. Evidence showed that the property was sold approximately three and one-half years later for $41,172.00. The trial court has broad discre-

tion in ascertaining the value of property in a dissolution action. *See Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996). We cannot say that the court abused its discretion when it deviated slightly from John's assessment of the value of his property.

■ Anita also complains that the trial court's division of marital property is punitive in nature and constitutes an abuse of discretion because John's share greatly exceeds the amount of her alleged dissipation. *See R.E.G. v. L.M.G.,* 571 N.E.2d 298, 305 (Ind.Ct.App.1991). Anita contends that, once dissipation is found, the only way in which a trial court can fairly compensate a party for the waste or misuse is to "restore the dissipated asset to the marital estate, and then divide this new value of the marital estate equally between the parties with the value of the dissipated asset being set over to the party who caused the dissipation." Brief of Appellant at 47. Anita's position ignores the plain language of the statute. Our supreme court considered the dissipation factor in a former version of the statute and stated:

> The trial court and the Court of Appeals apparently interpreted [the statute] ... to authorize the trial court to repay an aggrieved party in a dissolution judgment for property that had been dissipated by the other partner. This is a misinterpretation of that section. The statute clearly sets out factors the court is to use in determining what is a just and reasonable distribution of the property owned by the parties at the time of dissolution. [Conduct relating to dissipation] was one of the factors the court was to use in making a distribution of the parties' property.... [T]he factors set out in the statute can only affect the marital assets in which a vested

present interest exists at the time of the dissolution....

*In re Marriage of McManama,* 272 Ind. 483, 487–88, 399 N.E.2d 371, 373 (1980) (citing IND.CODE § 31–1–11.5–11(d) (1976)).[3] As emphasized in *McManama,* dissipation is only one factor that the court uses to weigh against the presumption of an equal property division when it equitably distributes the marital estate. I.C. § 31–1–11.5–11(c).[4]

■ Here, the court enumerated independent reasons for its division of property, including the proportion of property that each party brought into the marriage, the employment and earning abilities of the parties, and the contributions each party made in the acquisition and improvement of the marital property. These reasons provide support for the court's division of the marital estate. However, because we remand for a reconsideration of whether Anita's conduct constitutes dissipation, we must also remand for a reconsideration of what constitutes a just and reasonable division of marital property.

Remanded.

BAKER and GARRARD, JJ., concur.

---

3. If the marital estate is dissipated after the date the trial court uses for valuation, then the trial court may order compensation to replace the amount dissipated. *In re Marriage of Sloss,* 526 N.E.2d at 1040; *see Melnik,* 413 N.E.2d at 972–73.

4. Our court in *Cowden,* 661 N.E.2d 894, observed that the five statutory factors are used in two ways. First, the court weighs the factors against the presumption of an equal property

division. Second, if the evidence rebuts the presumption, the court uses the factors as a framework for the property division. *Id.* at 895–96. While Indiana Code § 31–1–11.5–11(c) does not state that trial courts must use the enumerated factors in fashioning property divisions, the historical development of the statute indicates that the legislature intended the factors to serve as the foundation for property divisions. *Id.* at 896 n. 2.