Anna Mae HARDEBECK, Appellant–
Respondent,

v.

James A. HARDEBECK,
Appellee–Petitioner.

No. 48A04–0904–CV–212.

Court of Appeals of Indiana.

Nov. 30, 2009.

Daniel K. Whitehead, Yorktown, IN, Attorney for Appellant.

### OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Anna Mae Hardebeck ("Wife") appeals from the dissolution decree which ended her marriage to James A. Hardebeck ("Husband"). She raises the following issues for review:

1. Whether the dissolution court abused its discretion when it adopted the proposed findings of fact and conclusions thereon that had been tendered by Husband.

2. Whether the dissolution court abused its discretion when it found that Wife had dissipated marital assets.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Husband and Wife were married on August 18, 1965. Each party had children from previous relationships, but the parties did not have children together. On April 2, 2008, Husband filed a petition for dissolution. The dissolution court granted Wife's motion for change of venue, and a final hearing was held on November 13, 2008. At the conclusion of that hearing, the court ordered the parties to submit proposed findings of fact and conclusions thereon ("proposed findings"). Wife tendered her proposed findings on November 24, and Husband tendered his proposed findings on December 1.

On December 16, the court entered its Decree of Dissolution ("Decree"), dissolving the parties' marriage and distributing the marital assets and liabilities between them. The Decree provides, in relevant part:

3. The marriage of the parties on August 18, 1965[,] is irretrievably broken and is dissolved.

4. The parties reared their separate children during their marriage but had no children born to them and [Wife] is not now pregnant.

5. Prior to their marriage, [Husband] had acquired a home at 2500 South E Street, Elwood, Indiana. During the marriage, [Husband] was the breadwinner; [Wife] was the homemaker. They improved their home. The couple acquired three neighboring lots. [Wife's] mother situated a mobile home on the lots. [Wife] claims she acquired the mobile home by inheritance; [Husband] claims it was acquired by purchase.

6. Sometimes the couple rented out the mobile home; sometimes it was occupied by various family members. It is currently occupied by [Wife's] son at no rent. [Husband] paid for the appraisal of both homes. The marital residence is valued at $65,000; the mobile home and three lots are worth $15,000.

7. The parties own a 1999 GMC van, a 2000 Honda, a 1995 Ford truck, a 1995 Chevrolet truck, fishing boats with trailers and a camper. They have agreed to the division of most of these assets. [Wife] shall have as her separate property the 1999 GMC van, the 1995 Ford truck and 2000 Honda[,] and [Husband] shall have as his separate property the 1995 Chevrolet truck and fishing boats with trailers. The camper shall be sold and the proceeds divided. [Husband] shall attempt to sell the camper. If it is not sold by him within six months it shall be sold at auction. All proceeds from the sale shall be divided equally. The marital residence is valued at $65,000.00 and shall immediately be listed for sale for a period of six months. Until the marital residence is sold, [Wife] shall have [the] right to occupy the marital residence. She shall pay the taxes which become due and shall keep the residence adequately insured and shall pay for the insurance. [Husband] shall transfer the utilities to the name of [Wife] and she shall be responsible for all utility payments of [sic] the residence. [Wife] shall have the option of deferring the listing and sale of the

marital residence for a period of up to 90 days during which time she shall pay [Husband] his ½ share of the equity in the total sum of $32,500.00. [If Wife] does not exercise this option the property shall be immediately listed for sale and all proceeds shall be divided equally. [If] the property is not sold after the six[-]month period it shall be sold at auction and the sale proceeds shall be divided equally. She shall have as her separate property the mobile home and 3½ [sic] lots.

8. [Husband] shall have his IRA, his small pensions, his tools, fishing equipment, dehydrator and bottle collection; [Wife] shall have the home furnishings and the burial plots.

9. Each party shall have any life insurance policy in his or her own name.

10. [Husband] holds title to a 1996 Kenworth. Initially, the Kenworth was purchased on behalf of [Wife's] son. He was unable to complete the purchase of the vehicle due to his loss of his CDL. The parties completed paying the attendant debt. Now the vehicle is sold on contract to [Wife's] nephew. [Wife] claims that the Kenworth was paid in part from her disabled daughter's funds. The Kenworth is titled in [Husband's] name alone; the loan for its purchase was in his name alone. Even after the purchase was complete, [Wife] did nothing to cause the title to be placed in either her name or that of her daughter. From this day forward, the proceeds of the sale shall be divided equally. In the event the sale is not completed, [Husband] shall have the right to control the subsequent sale of the Kenworth and shall divide the net receipts with [Wife] equally.

11. [Wife] controlled the parties' income and her daughter's disability benefits during the marriage. For forty years, [Husband] turned over his entire paycheck to [Wife] who then paid their obligations. [Wife] had very little income of her own during their marriage. Two years ago, [Husband] began cashing his own paycheck[,] taking some for his own expenses and depositing the remainder in the parties' joint account. [Wife] resented this change in circumstances. She refused to file a joint income tax return with [Husband] for tax years 2006 and 2007. This decision cost [Husband] over $8,600 in state and federal income taxes. [Husband, Wife and Wife's daughter] all benefitted from [Husband's] income during the two[-] year period but only [Husband] paid the resultant taxes without the benefit of claiming [Wife] and her daughter as dependents. This was a dissipation of the parties' assets.

12. The debts owed to Mastercard and Discover shall be paid by [Wife].

13. The division of assets is unequal in [Wife's] favor. For that reason and due to [Wife's] dissipation of assets, the Court declines to award attorney fees in [Wife's] favor.

14. The parties execute [sic] any and all documents necessary to effectuate the terms of this decree.

Appellant's App. at 8–11. Wife now appeals.[1]

---

1. Husband has not filed an appellee's brief.   In such a case, we need not undertake the

## DISCUSSION AND DECISION

### Issue One: Adoption of Proposed Findings

■ Wife contends that the dissolution court erred when it adopted Husband's proposed findings "wholesale[.]" Appellant's Brief at 7. We addressed the adoption of proposed findings of fact and conclusions thereon in *In re Marriage of Nickels*, 834 N.E.2d 1091 (Ind.Ct.App. 2005):

> Trial Rule 52(C) encourages trial courts to request that parties submit proposed findings of fact and conclusions of law and it is not uncommon or per se improper for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. *Clark v. Crowe*, 778 N.E.2d 835, 841 n. 3 (Ind. Ct.App.2002) (citing *A.F. v. Marion County Office of Family & Children*, 762 N.E.2d 1244, 1249 (Ind.Ct.App. 2002), trans. denied). When a party prepares proposed findings, they [sic] "should take great care to insure that the findings are sufficient to form a proper factual basis for the ultimate conclusions of the trial court." *Marathon Oil Co. v. Collins*, 744 N.E.2d 474, 477 n. 2 (Ind.Ct.App.2001) (citing *Maloblocki v. Maloblocki*, 646 N.E.2d 358, 361 (Ind.Ct. App.1995)). Moreover, "the trial court should remember that when it signs one party's findings, it is ultimately responsible for their correctness." *Id.* As noted by this court in *Clark*, we urge trial courts to scrutinize parties' submissions for mischaracterized testimony and legal argument rather than the findings of fact and conclusions of law as contemplated by the rule. 778 N.E.2d at 841 n. 3.

We encourage such scrutiny for good reason. As our supreme court has observed, the practice of accepting verbatim a party's proposed findings of fact "weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court." *Cook v. Whitsell–Sherman*, 796 N.E.2d 271, 273 n. 1 (Ind.2003) (citing *Prowell v. State*, 741 N.E.2d 704, 708–09 (Ind. 2001)). However, as the court also noted, verbatim reproductions of a party's submissions are not uncommon, as "[t]he trial courts of this state are faced with an enormous volume of cases and few have the law clerks and other resources that would be available in a more perfect world to help craft more elegant trial court findings and legal reasoning." *Prowell*, 741 N.E.2d at 708. The need to keep the docket moving is properly a high priority for our trial bench. *Id.* at 709. For this reason, *the practice of adopting a party's proposed findings is not prohibited. Id.* Thus, although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, *the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous. See Saylor v. State*, 765 N.E.2d 535, 565 (Ind. 2002) (citing *Woods v. State*, 701 N.E.2d 1208, 1210 (Ind.1998)).

834 N.E.2d at 1095–96 (emphases added). We will not reweigh the evidence or assess witness credibility. *O'Connell v. O'Connell*, 889 N.E.2d 1, 10 (Ind.Ct.App.2008).

Here, Wife contends that the dissolution court erred by its "wholesale adoption of [Husband's] findings without essential changes" and by the "insertion of erroneous evidentiary matters." Appellant's Brief at 7. As a result, Wife continues, the

burden of developing arguments for him. *See Splittorff v. Aigner*, 908 N.E.2d 669, 671 n. 2 (Ind.Ct.App.2009). Applying a less stringent

standard of review, we may reverse the trial court if the appellant establishes prima facie error. *Id.*

court deprived her of a "full, fair and unbiased adjudication of [Husband's] dissolution proceeding[.]" *Id.* We cannot agree.

■ First, Wife acknowledges that the wholesale adoption of one party's proposed findings of fact is not error per se. *See In re Marriage of Nickels,* 834 N.E.2d at 1096. Moreover, a review of the Decree and Husband's proposed findings shows that the court did not adopt Husband's proposed findings verbatim. The court added language in paragraph 7 to allow Wife the opportunity to defer listing the marital residence for sale. The court also—without explanation or replacement—deleted the reference in paragraph 13 of Husband's proposed findings to an exhibit that set out the values of property in the marital estate. Although those changes are not significant in number, they indicate that the dissolution court scrutinized the proposed findings and made changes to address what it deemed to be deficiencies or inaccuracies. The dissolution court's adoption of the majority of Husband's proposed findings is not, in itself, error. *See id.*

Regarding the dissolution court's alleged insertion of erroneous evidentiary matters, Wife argues as follows:

At one point the decision [sic] states[:] "[Wife] shall have the home furnishings and the burial plots." At another point the decision [sic] states: "The debts owed to MasterCard and Discover shall be paid by [Wife]." That is contradictory because some of the home furnishings are on the MasterCard and thus, the Court is awarding home furnishings to the [Wife] while in the same instance making [her] pay for some of those home furnishings. Unfortunately, but clearly evident, [Wife] was denied a full, fair and unbiased adjudication of his [sic] dissolution proceeding when the

court essentially adopted the proposed findings of fact and memorandum decision [sic] submitted.

*Id.* Wife does not explain how the award to her of particular assets and the corresponding debts for those assets shows bias or lack of fairness in the division of the marital estate. And we see nothing inherently irrational, unfair, or nonsensical in such allocations. In fact, where practicable, keeping an asset and its attendant debt in the name of the same person is likely to help avoid future litigation over the payment or security of such a debt.

In sum, the dissolution court's adoption of Husband's findings of fact and conclusions thereon was not error. *See In re Nickels,* 834 N.E.2d at 1096. And Wife has not shown, either in general or by specific example with citation to the record on appeal, that the dissolution court's adoption of Husband's proposed findings, with revisions, constituted error or resulted in an unfair or biased proceeding. As such, Wife's first argument must fail.

**Issue Two: Dissipation**

■ Wife next contends that her refusal to file joint tax returns does not constitute dissipation of the marital assets. In dissolution cases, the court "shall divide the [marital] property in a just and reasonable manner[.]" Ind.Code § 31–15–7–4. Indiana Code Section 31–15–7–5 governs the distribution of marital property and provides as follows:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence of the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regard-

less of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) *The conduct of the parties during the marriage as related to the disposition or dissipation of their property.*

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

(Emphasis added). The division of marital assets is within the dissolution court's discretion, and we will reverse only for an abuse of discretion. *O'Connell,* 889 N.E.2d at 10.

■■■ Dissipation generally involves the use or diminution of the marital estate for a purpose unrelated to the marriage and does not include the use of marital property to meet routine financial obligations. *Balicki v. Balicki,* 837 N.E.2d 532, 540 (Ind.Ct.App.2005), *trans. denied; Coyle v. Coyle,* 671 N.E.2d 938, 943 (Ind. Ct.App.1996). Dissipation of marital assets may also include the frivolous and unjustified spending of marital assets. *Grathwohl v. Garrity,* 871 N.E.2d 297, 303 (Ind.Ct.App.2007). " 'The test for dissipation is whether the assets were actually wasted or misused.' " *Id.* (quoting *Balicki,* 837 N.E.2d at 540)). To determine whether dissipation has occurred, we consider the following factors:

1. Whether the expenditure benefited the marriage or was made for a purpose entirely unrelated to the marriage;

2. The timing of the transaction;

3. Whether the expenditure was excessive or de minimis; and

4. Whether the dissipating party intended to hide, deplete, or divert the marital asset.

*Kondamuri v. Kondamuri,* 852 N.E.2d 939, 952 (Ind.Ct.App.2006) (citing *Coyle,* 671 N.E.2d at 943).

■■■ Dissolution courts may consider evidence of either pre- or post-separation dissipation. *Id.* Our court reviews findings of dissipation in various contexts under an abuse of discretion standard. *Kondamuri,* 852 N.E.2d at 951. Thus, we will reverse only if the lower court's judgment is clearly against the logic and effect of the facts and the reasonable inferences to be drawn from those facts. *Id.*

Wife states that "[o]ur legislature intended that the term 'dissipation' carry its common meaning denoting 'foolish' or 'aimless' spending." Appellant's Brief at 8. She then contends that the "failure to file joint tax returns does not fall within the meaning of foolish or aimless spending" and, therefore, does not constitute dissipation under Indiana Code Section 31–15–7–5(4). Whether a spouse's refusal to file a joint tax return constitutes dissipation in a dissolution action is a matter of first impression in Indiana. We find cases from other jurisdictions to be instructive.

In *Gruver v. Gruver,* 372 Pa.Super. 194, 539 A.2d 395 (1988), *app. denied,* 520 Pa. 605, 553 A.2d 968 (1988), a husband filed individual tax returns, instead of joint tax returns with his wife, for 1982 and 1983, because he claimed to have paid all of the federal and state taxes and the cost of tax return preparation for 1981. The wife in-

stituted dissolution proceedings in early 1983, and the dissolution court found that the husband's refusal to file joint tax returns dissipated the marital estate. The intermediate appellate court affirmed, "perceiv[ing] no error" in the dissolution court's conclusion that the increased tax liability that resulted from the filing of individual returns instead of joint returns resulted in a dissipation of marital property. *Id.* at 398.

But in *Echols v. Echols,* No. E1999–00619–COA–R3–CV, 2000 WL 688589, at *6, 2000 Tenn.App. LEXIS 373, at *17 (Tenn.Ct.App. May 30, 2000),[2] the court held that, on the facts of that case, the wife's refusal to file joint tax returns with the husband for two years during the marriage did not constitute dissipation. There, the wife had filed a petition for dissolution in March 1995. In the dissolution proceedings, the wife testified that she "had legitimate concerns that [the husband] was under-reporting his income and that she could be held liable for such under-reporting[.]" *Id.* The wife testified that her attorney had advised her not to file a joint tax return with the husband for 1995 and that the husband had barter arrangements for goods and services from other companies and that those deals were not reported in the company's financial records. *Id.* An employee of the husband's corporation also testified that she had seen the husband take cash from the corporation's cash drawer for his personal use. And there was evidence that the husband had been using corporate funds to pay for personal vehicle maintenance expenses, including for a Rolls Royce. On such facts, the appellate court rejected the husband's claim that the wife had dissipated the marital estate by refusing to file

joint tax returns, reasoning that the wife "had a reasonable basis for her decision not to file joint tax returns with her Husband." *Id.*

■■■ We find the reasoning of the *Gruver* and *Echols* courts to be persuasive. We hold that whether a spouse's failure to file a joint tax return constitutes dissipation under Indiana Code Section 31–15–7–5(4) must be determined from a review of the facts and circumstances in each case. As in any case involving an allegation of dissipation, the court should consider relevant factors including whether the expenditure benefited the marriage or was made for a purpose entirely unrelated to the marriage, the timing of the transaction, whether the expenditure was excessive or de minimis, and whether the dissipating party intended to hide, deplete, or divert the marital asset. *See Kondamuri,* 852 N.E.2d at 952; *Coyle,* 671 N.E.2d at 943.

Again, here, the dissolution court found in relevant part:

> [Wife] controlled the parties' income and her daughter's disability benefits during the marriage. For forty years, [Husband] turned over his entire paycheck to [Wife] who then paid their obligations. [Wife] had very little income of her own during their marriage. Two years ago, [Husband] began cashing his own paycheck[,] taking some for his own expenses and depositing the remainder in the parties' joint account. [Wife] resented this change in circumstances. She refused to file a joint income tax return with [Husband] for tax years 2006 and 2007. This decision cost [Husband] over $8,600 in state and federal income taxes. [Husband, Wife and Wife's daughter] all benefitted from

---

**2.** We note that this decision of the Court of Appeals of Tennessee is not published. We discuss it only for illustrative purposes and do not encourage the use by counsel of unpublished decisions.

[Husband's] income during the two[-]year period but only [Husband] paid the resultant taxes without the benefit of claiming [Wife] and her daughter as dependents. This was a dissipation of the parties' assets.

Appellant's App. at 11. In other words, the dissolution court found that Wife refused to file joint tax returns out of spite. The tax years for which she refused to file joint returns were two of the last three years of the marriage. Given the apparent value of the marital estate, Husband's additional tax obligation of $8,600 was a significant waste.[3] In other words, Wife acted without regard to the negative impact this unnecessary expenditure would have on the marital estate. Finally, Wife does not suggest, nor would the record support, that she filed her tax returns separately in order to protect herself based upon a reasonable belief that Husband's joint returns were fraudulent or otherwise subject to challenge. On these facts, we cannot say that the dissolution court abused its discretion when it found that Wife's refusal to file joint tax returns for 2006 and 2007 constituted dissipation.

Nevertheless, Wife argues that her conduct does not constitute dissipation because it was "prior to the marriage breakup and did not occur after the dissolution petition was filed[;]" that there was no evidence that she acted "with intent to deplete marital assets[;]" and that she agreed to file a joint tax return for the 2007 tax year but Husband "still chose to leave and file a separate tax return[.]" Appellant's Brief at 9. Regarding Wife's first point, again, we may consider pre- and post-separation dissipation. *Kondamuri*, 852 N.E.2d at 952. Wife's argument

about intent to deplete assets is addressed above. Wife's argument that *Husband* chose to file a separate return for 2007 constitutes a request that we reweigh the evidence, and neither does Wife direct us to support in the record for this contention. Thus, the issue is waived. Wife's argument that the dissolution court abused its discretion in finding dissipation must fail.

Affirmed.

BARNES, J., concurs.

KIRSCH, J., concurs in part and dissents in part with separate opinion.

KIRSCH, Judge, concurring in part and dissenting in part.

"For better, for worse; for richer, for poorer."

These words uttered at the beginning of so many marital relationships oftentimes come into fuller focus when those relationships are dissolved.

My colleagues hold that the trial court was within its discretion in concluding that a spouse may be found to have dissipated property for her refusal to sign and file joint tax returns. I respectfully dissent from that holding.

When she refused to sign and file a joint tax return, the relationship between Anna Mae Hardebeck and her husband was already strained. I do not know, nor need to know, the causes. Typically though, such causes either include or result in a loss of trust on the part of one or both partners. I believe that requiring a spouse to execute a joint income tax return in such circumstances and to incur the

---

**3.** Husband testified and presented evidence that the value of the marital estate, net of liabilities, was $115,964.64. Wife did not offer evidence regarding the value of the marital estate except to agree or express her uncertainty as to Husband's valuation of particular assets. On appeal, Wife does not contest the valuation or distribution of the marital estate.

joint and several liability that accompanies filing such a return, including any deficiencies resulting from it, any penalties assessed because of it and any additional tax liability subsequently imposed on it is bad law and bad policy.

My colleagues note that "Wife does not suggest, nor would the record support that she filed her tax returns separately in order to protect herself based on a reasonable belief that Husband's joint returns were fraudulent or otherwise subject to challenge." *Opinion,* p. 702. I would respond that Wife's potential liability goes far beyond potential liability for fraud. Here, there is no indication that the parties' tax liability has been finally determined, that the parties' financial condition has been audited, or that the tendered joint returns contained no deductions or other tax treatments that may be subject to challenge. While the federal tax laws provide certain protections for innocent spouses who sign joint returns, the spouse has the burden of proving not only that she did not know of such improper treatment, but also that she did not benefit from it.

Finally, I note that there is no evidence that Husband offered to indemnify Wife in any way for any tax liabilities subsequently assessed because of the joint return, and the trial court's decree neither orders Husband to pay any subsequently determined tax liability or indemnify Wife against such liability.

From my perspective, Wife was not only within her statutory rights in refusing to file a joint tax return, but she may have been acting with great prudence in doing so. I would reverse the trial court's finding that Wife's refusal to sign joint income tax returns was dissipation.