## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 30 2016, 8:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| --- | --- |
| Mark Small | Michael A. Ksenak |
| Indianapolis, Indiana | Ksenak Law Firm |
| | Martinsville, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| In the Matter of the Marriage of Frederick Soskel, *Appellant-Respondent,* <br><br> v. <br><br> Jo Betty Ingram, *Appellee-Petitioner.* | September 30, 2016 <br><br> Court of Appeals Case No. 55A01-1512-DR-2089 <br><br> Appeal from the Morgan Superior Court <br><br> The Honorable Christopher L. Burnham, Judge <br><br> Trial Court Cause No. 55D02-1209-DR-1967 |

**Kirsch, Judge.**

[1]     Frederick Soskel ("Husband") appeals the trial court's decree of dissolution ("the Decree") of his marriage to Jo Betty Ingram ("Wife") and its distribution of the marital estate. Husband raises several issues on appeal, which we restate as:

I. Whether the trial court abused its discretion when it excluded evidence of certain bank accounts belonging to Wife;

II. Whether the trial court abused its discretion when it allowed certain evidence to be admitted that Husband claims was related to efforts to negotiate and settle the marital estate; and

III. Whether the trial court abused its discretion in assigning value to the properties in Indianapolis and Bloomington that were awarded to Husband in the division of the marital property.

We affirm.

## Facts and Procedural History

In 1994, Husband and Wife worked together at the same company, and began dating. In 1996, they started a business together called The Tool Shed that involved computers, and Husband worked with the computer hardware aspect while Wife worked with the software. Although Husband and Wife worked together for The Tool Shed, Husband claimed it was his business. *Tr.* at 233. Neither Husband nor Wife derived any income from The Tool Shed. In September 1998, the parties stopped doing business as The Tool Shed and incorporated a new business, Soskel-Ingram & Co. ("S-I"). At that time, they had $50,000 in The Tool Shed bank account. Each party borrowed $25,000 from The Tool Shed as startup capital for S-I, which was paid back with interest from the earnings of S-I.

Before marrying Husband, Wife lived in a house located on Neitzel Road in Mooresville, Indiana that she had owned since 1987. The house was on land

that had been in her family for a long time, and Wife had a mortgage on the property ("the Mooresville property"). During his first marriage, Husband had purchased property in Bloomington, Indiana ("the Bloomington property"), when his daughter was a student at Indiana University, and he had received the Bloomington property as a result of the dissolution of that marriage. In late 1996, Husband purchased property on Oakwood Trail in Indianapolis, Indiana ("the Indianapolis property"), and Wife was involved in selecting the Indianapolis property, but at the time of purchase, only Husband's name was on the deed. In April 1997, Husband and Wife became engaged, and in June 1997, Wife moved into the Indianapolis property to live with Husband. The couple were married on May 25, 2002.

[5] During the marriage, income from S-I was used to pay off the mortgage on the Mooresville property and on the Bloomington property. However, a mortgage balance remained on the Indianapolis property during the marriage. In 2004, Husband and Wife put all of their properties and accounts into both of their names as an estate planning measure. Work was done on the Mooresville property and paid for from S-I income. The Bloomington property was usually rented, but during the 2005-2006 school year it was not, and Husband decided to do renovations on the Bloomington property. Both Husband and Wife were involved in the renovations on the Bloomington property. While involved in business together, Husband and Wife paid themselves very little salary, which minimized the Social Security benefits they could have otherwise received.

Instead of paying themselves a larger income, Husband and Wife built up equity in S-I and in their real estate and paid down their debt.

[6] On September 17, 2012, Wife filed a petition for dissolution of marriage from Husband. On July 10, 2015, a final hearing was held in the dissolution action. At the hearing, Husband introduced the testimony and appraisals of real estate appraiser Jason Vencel ("Vencel") who valued the Bloomington property at $275,000 as of May 25, 2002, the date of the parties' marriage, and at $375,000 as of September 17, 2012, the date the petition for dissolution was filed. *Tr.* at 18. Vencel testified at the hearing that he valued the Mooresville property at $145,000 as of May 25, 2002 and $180,000 as of September 17, 2012. *Id.* at 8. Husband introduced evidence, without testimony, of an appraisal of the Indianapolis property performed by Mark Ratterman, who valued it at $120,000 as of both May 25, 2002 and September 17, 2012. *Resp't's Ex.* G. At the hearing, Wife introduced the testimony and appraisals of real estate appraiser Tony Ross ("Ross"), who valued the Bloomington property at $600,000 as of March 16, 2015, but did not appraise the Bloomington property at the date of cohabitation or the date of marriage. Ross testified that he valued the Mooresville property at $175,000 as of March 17, 2015 and the Indianapolis property at $152,000 as of March 17, 2015.

On November 3, 2015, the trial court issued the Decree,[1] dissolving the marriage of Husband and Wife. In the Decree, the trial court adopted the following values for the properties owned by Husband and Wife: Bloomington property, $600,000; Mooresville property, $175,000; and Indianapolis property, $152,000 with a mortgage amount of $58,876. Husband now appeals. Additional facts will be added as necessary.

## Discussion and Decision

## I. Exclusion of Evidence

Generally, the exclusion of evidence is a determination entrusted to the discretion of the trial court. *Apter v. Ross,* 781 N.E.2d 744, 752 (Ind. Ct. App. 2003), *trans. denied.* We will reverse a trial court's decision only for an abuse of discretion, that is, when the trial court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* Moreover, any error in the admission or exclusion of evidence must affect the substantial rights of a party before reversal is appropriate. Ind. Trial Rule 61; Ind. Evidence Rule 103(a).

Husband argues that the trial court abused its discretion when it excluded evidence concerning two bank accounts belonging to Wife. Husband claims this excluded evidence would have shown that Wife dissipated marital assets

---

[1] We commend the trial court for the thoroughness of its findings, which greatly facilitated our appellate review.

during the course of the marriage. He asserts that he did not know about the accounts and was told by Wife that the accounts were dormant.

[10] In its determination of whether an equal division of marital property is just and reasonable, a trial court may look to the conduct of the parties during the marriage as related to the dissipation of their property. Ind. Code § 31-15-7-5(4). Dissipation generally involves the use or diminution of the marital estate for a purpose unrelated to the marriage and does not include the use of marital property to meet routine financial obligations. *Hardebeck v. Hardebeck*, 917 N.E.2d 694, 700 (Ind. Ct. App. 2009). Dissipation of marital assets may also include the frivolous and unjustified spending of marital assets. *Id*. The test for dissipation is whether the assets were actually wasted or misused. *Id.*

[11] In this case, Husband attempted to introduce testimony and evidence concerning two bank accounts belonging to Wife that he claimed showed dissipation of assets by Wife. Wife's counsel objected to this evidence as being irrelevant because the check registers dated back to 1996, which predated the marriage, and stopped on February 1, 2010, which was two years prior to the filing of the dissolution petition. *Tr.* at 258. Husband's counsel responded that the evidence showed dissipation of assets, and the trial court ruled that the evidence was only minimally relevant and sustained the objection. *Id*. at 259.

[12] Husband has failed to show how this excluded evidence would have established that Wife dissipated marital assets, stating only that he was unaware of the accounts. As Wife's counsel pointed out, the accounts spanned over thirteen

years, beginning in 1996, almost six years before the parties were married, and the last entry was in February 2010, which was before Wife filed her petition for dissolution. At the hearing, Husband testified that there was an "accumulation of about $305,329.65 deposited in those accounts" during a span of thirteen years and eight months. *Id.* at 258. This averaged about $1,862 per month. However, the account registers showed not only an accumulation of deposits, but also reflected payment of expenses for such things as groceries, utilities, medical expenses, charitable donations, and personal expenses. As Husband has not demonstrated how the transactions contained in the excluded evidence would have proven dissipation of marital assets by Wife, we conclude that the trial court did not abuse its discretion in excluding the evidence.[2]

## II. Admission of Evidence

[13]     Husband contends that the trial court abused its discretion when it allowed Wife's counsel to question him during cross-examination regarding certain emails between Husband and Wife that Husband asserts constituted evidence of negotiation or an offer to settle and were, therefore, inadmissible. The decision to admit evidence rests within the discretion of the trial court, and we will only

---

[2] Husband argues on appeal that Wife was judicially estopped from making her objection that the evidence Husband sought to introduce predated the marriage due to the fact that she had previously argued that certain evidence about how the mortgages and expenses were paid pre-marriage should be admissible. *Tr.* at 126. However, Husband did not make this argument to the trial court. Issues not raised at the trial court are waived on appeal. *Cavens v. Zaberdac*, 849 N.E.2d 526, 533 (Ind. 2006). "In order to properly preserve an issue on appeal, a party must, at a minimum, 'show that it gave the trial court a bona fide opportunity to pass upon the merits of the claim before seeking an opinion on appeal.'" *Id.* (quoting *Endres v. Ind. State Police*, 809 N.E.2d 320, 322 (Ind. 2004)). Therefore, because Husband did not raise this issue to the trial court, we find it is procedurally defaulted and waived on appeal.

reverse if there is a manifest abuse of that discretion. *Matzat v. Matzat,* 854 N.E.2d 918, 919 (Ind. Ct. App. 2006). An abuse of discretion in this context occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. *Id.* Reversal is only appropriate where the error in the admission of evidence affects the substantial rights of a party. Ind. Trial Rule 61; Ind. Evidence Rule 103(a).

[14] Under Indiana Evidence Rule 408, evidence concerning offers of settlement or compromise is generally not admissible. "Indiana judicial policy strongly urges the amicable resolution of disputes and thus embraces a robust policy of confidentiality of conduct and statements made during negotiation and mediation." *Horner v. Carter*, 981 N.E.2d 1210, 1212 (Ind. 2013). Evidence Rule 408 does not require exclusion when the evidence is offered for a purpose other than "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Ind. Evidence Rule 408.

[15] In the present case, during cross-examination of Husband, Wife's counsel sought to question Husband about emails from December 2012, which was after the dissolution petition had been filed, in which Husband stated, "that [Wife] could take $50,000 that was there and use that [sic] would be a good means of starting up." *Tr.* at 276. Husband objected on the basis that this evidence was a matter of compromise, stating, "that there was a period of time in which [Husband] was unrepresented and they had called . . . what I would call a hiatus through the proceeding, and they were trying to work things out

themselves, and it might be . . . and it is a matter of compromise." *Id*. The trial court overruled the objection.

[16] Prior to asking Husband the question regarding the December 2012 emails, Wife's counsel had asked Husband about his concerns regarding what happened with the corporate account after the dissolution petition was filed and with how Wife spent the money. *Id*. at 275-76. Wife's counsel then continued to ask Husband, regarding the emails, if he email Wife and "told her that she could keep the money in the account in the business to start that business on her own, because you were retiring, and this would be a good jump start for her." *Id*. at 276. Then, after showing Husband the emails, Wife's counsel rephrased the question as, "did you tell her that with $50,000 to company [sic], that would be a good start for her to be on her own because you guys would get a divorce." *Id*. at 277. When the trial court overruled Husband's objection, it reasoned, "Counsel, you've been bringing up the issue of dissipation of assets post separation. . . . [I]f you've got an explanation as to why she was spending the money, that's fine, I want to hear it." *Id*. at 278. Therefore, the evidence was introduced to show why Wife spent corporate income post-separation and not as evidence of compromise between the two parties. Because the evidence was not introduced for a prohibited purpose, the trial court did not abuse its discretion when it admitted it into evidence.

# III.  Appraised Values of Properties

[17]  We review a trial court's decision in ascertaining the value of property in a dissolution action for an abuse of discretion.  *Crider v. Crider*, 15 N.E.3d 1042, 1056 (Ind. Ct. App. 2014), *trans. denied.*  Generally, there is no abuse of discretion if a trial court's chosen valuation is within the range of values supported by the evidence.  *Id.*  "'A valuation submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial court's determination in that regard.'"  *Alexander v. Alexander,* 927 N.E.2d 926, 935 (Ind. Ct. App. 2010) (quoting *Houchens v. Boschert,* 758 N.E.2d 585, 590 (Ind. Ct. App. 2001), *trans. denied*), *trans. denied.*  In reviewing a trial court's valuation of property in a dissolution, we will neither reweigh the evidence nor judge the credibility of witnesses.  *Crider*, 15 N.E.2d at 1056.

[18]  Husband argues that the trial court abused its discretion when it assigned values to the Bloomington property and the Indianapolis property in the Decree.  He contends that it was an abuse of discretion to use the values supplied by Wife's appraiser, Ross, and not the values supplied to the trial court by his appraiser, Vencel.  Husband asserts that, although Vencel was offered as an expert for his testimony regarding valuation of the Bloomington property and the Mooresville property, Ross was never declared to be an expert by the trial court.

[19]  As to Husband's contention that Ross was not declared to be an expert, Husband did not raise any objection to Ross's qualifications at trial.  Failure to

object to evidence offered at trial operates as a waiver of the issue on review. *Rode v. State*, 524 N.E.2d 797, 800 (Ind. Ct. App. 1988), *trans. denied*. We, therefore, find that Husband cannot now, for the first time on appeal, raise an objection to Ross's qualifications as a real estate appraiser.

[20] In the Decree, the trial court accepted Ross's appraised value of $600,000 for the Bloomington property and his appraised value of $152,000 for the Indianapolis property for purposes of distribution of the marital assets. Ross testified that he used two different methodologies in valuing the Bloomington property, the sales comparison approach, where he looked at sales of investment properties in the Bloomington area, and the income approach, where he looked at the profit margins for renting the property. The trial court, in the Decree, found that the comparables used by Vencel to appraise the Bloomington property "were not true comparables and that the comparables used by . . . Ross provide[d] a more accurate reflection of the value of the Bloomington property." *Appellant's App*. at 9. As for the Indianapolis property, Ross testified about his evaluation of the property, the comparables he utilized, and the reasons his appraisal varied from the one submitted by Husband. We conclude that the trial court's chosen valuation was within the range of values supported by the evidence, and the trial court did not abuse its discretion in accepting the appraisals of Ross. Husband's arguments to the contrary are simply requests to reweigh the evidence, which we cannot do on appeal. *Crider*, 15 N.E.2d at 1056. Affirmed.

[21] May, J., and Crone, J., concur.